UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADAM DAVIS, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No. 10-0098 (EGS) ) Document No. 34 |
| FEDERAL BUREAU OF INVESTIGATION *et al.*, | ) ) ) |
| Defendants. | ) ) |

MEMORANDUM OPINION

In this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff sues several federal agencies and agency components for allegedly failing to respond to his requests for records pertaining to himself. He names as defendants the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), the Departments of Treasury, Justice ("DOJ") and Homeland Security, the Internal Revenue Service ("IRS"), the Financial Crimes Enforcement Network ("FinCen"), the Secret Service, and the Securities and Exchange Commission ("SEC").

Pending before the Court is the motion of the FBI, EOUSA, DOJ and IRS to dismiss or for summary judgment [Dkt. # 34]. Upon consideration of the parties' submissions and the relevant parts of the record, the Court will grant in part and deny in part the moving defendants' motion for summary judgment.

I. BACKGROUND

Plaintiff alleges that he requested from each defendant all records pertaining to himself, "including, but not limited to, Criminal, Civil, Corporate, Individual, and Bond Information

and/or Commercial Crimes Bonding Information and/or Case Bonding Information and/or Commercial Crimes Bonding Certification . . . ." Compl. Attach.[1] Except for the IRS, which first provided plaintiff a substantive response in 2009, the moving defendants responded substantively to the request during the course of this civil action filed on January 20, 2010. Their pertinent responses are as follows.

<u>FBI's Response</u>

The FBI processed 471 pages of responsive records and, on February 18, 2010, and July 12, 2010, released 454 pages. It withheld information under FOIA exemptions 2, 3, 6, 7(C), 7(D) and 7(E). *See* 5 U.S.C. § 552(b). Declaration of David M. Hardy ("Hardy Decl.") [Dkt. # 34-4] ¶ 4.

<u>EOUSA's Response</u>

EOUSA initially located 228 responsive pages and, by letter of March 23, 2010, released to plaintiff 61 pages, eight of which contained redactions. EOUSA withheld 108 pages in full and withheld plaintiff's presentence investigation report pursuant to Bureau of Prisons policy that permits a prisoner to review the document at his facility but not possess it. Declaration of Vinay J. Jolly ("Jolly Decl.") [Dkt. # 34-8], Ex. C. In addition, EOUSA referred 39 pages to the FBI, from where they originated, to provide a direct response to plaintiff. Jolly Decl. ¶ 7. By letter of May 7, 2010, EOUSA released to plaintiff an additional 116 pages, 74 of which contained redactions, and it withheld 744 pages in full. EOUSA referred approximately 604 pages to the

---

[1] The FOIA request attached to the complaint is neither addressed to any particular agency nor dated and signed. The defendants have placed in the record variations of the request substantially seeking the same information.

FBI, 124 pages to DOJ's Criminal Division and seven pages to the IRS.[2] *Id*. ¶ 8 & Ex. E. EOUSA withheld information under FOIA exemptions 3, 5, 6 and 7(C). *Id*. ¶¶ 7, 8.

DOJ's Response

By letter of June 11, 2010, the Criminal Division withheld all of the 24 pages of responsive material it had located in the Office of International Affairs ("OIA") under FOIA exemptions 2, 5, 7(D) and 7(E). Declaration of Catherine Gonzalez Gallego ("Gallego Decl.") [Dkt. # 34-11] ¶ 14, Ex. 6 & *Vaughn* Index [Dkt. # 34-13]. Because plaintiff had not replied to the Division's request of November 30, 2009, to provide within 30 days additional information regarding his request to search the files of the Electronic Surveillance Unit, the Division closed that portion of plaintiff's request. *Id*., Ex. 6 at 2.

IRS's Response

Following a search for records, the IRS, by letter dated November 9, 2009, informed plaintiff that it had located no responsive records because he did not file tax returns for tax years 2000, 2001, 2002 and 2004 "through present" and the IRS was "currently unable to secure the administrative file for 2003."[3] Declaration of Anne M. Jensen ("Jensen Decl.") [Dkt. # 34-14], Ex. B [Dkt. # 35]. Plaintiff was invited to "resubmit" his request in 90 days. *Id*. at 1. The letter further informed plaintiff that "any existing records pertaining to [his criminal case] would be maintained by the Federal Court and [DOJ]," *id*., and advised him of his right to appeal

---

[2] Jolly states that EOUSA referred 604 pages "to the FBI" and seven pages "to the FBI." Jolly Decl., n.4. The IRS' declaration confirms that EOUSA referred seven pages to it.

[3] In his request to the IRS, plaintiff sought copies of "all documentation and information relating [to him] dated January 1, 2000-September 30, 2009," as well as information relating to his criminal case and copies of "all bonds or monetary instruments issued in [his name]." Jensen Decl., Ex. A [Dkt. # 35].

administratively within 35 days of the determination. Jensen Decl. ¶ 8 & Ex. C. Ms. Jensen "was never contacted by an Appeals Officer or made aware of any appeal made by plaintiff regarding his FOIA request." Jensen Decl. ¶ 9.

Regarding the seven pages referred from EOUSA, the IRS, by letter of June 11, 2010, released four pages to plaintiff and withheld three pages under exemption 3. Declaration of Darlene A. Broomall ("Broomall Decl.") [Dkt. # 34-15], Ex. A.

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows [by affidavit or other admissible evidence] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing a summary judgment motion must show that a genuine factual issue exists by "(A) citing to particular parts of materials in the record. . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c). Any factual assertions in the moving party's affidavits will be accepted as being true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir. 1992). In a FOIA action, the Court may award summary judgment solely on the information provided in agency affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

## III. DISCUSSION

### *1. Claimed Exemptions*

In his opposition captioned Response to Defendant's Motion to Dismiss or . . . partial Summary Judgment ("Pl.'s Opp'n") [Dkt. # 37] , plaintiff does not address any particular argument or state facts to create a genuine issue about the moving defendants' claimed exemptions, nor has he contested the defendants' record referrals. Thus the Court, consistent with the warnings given in the Order of August 4, 2010, finds that plaintiff has conceded defendants' justification for withholding information. *See In re Miller*, 2004 WL 963819 (D.C. Cir., May 4, 2004) (In managing its docket under the circumstances presented, "the court may choose to . . . resolve the motion for summary judgment on the merits without an opposition . . . or [] treat summary judgment as conceded."); *FDIC v. Bender*, 127 F.3d 58, 67 (D.C. Cir. 1997) (finding no abuse of discretion in Court's enforcement of local rule by "treat[ing] the FDIC's motion for summary judgment as conceded"); *Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) ("an argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded") (citing cases). Nevertheless, the Court must determine the propriety of defendants' withholding of documents in their entirety. *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999) (requiring the district court to make a segregability finding whether raised by the parties or not); accord *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.") (citations omitted).

FBI Records

The FBI appears to have withheld 17 pages in their entirety but its declarant, Mr. Hardy, has not identified those pages and explained the applicable exemptions. The Court therefore is without sufficient information to determine the propriety of the FBI's withholding of complete documents and, thus, will deny the FBI's motion on this issue without prejudice.[4]

EOUSA Records

In two separate releases, EOUSA withheld a total of 852 pages under exemptions 5, 6, and 7(C). Jolly Decl. ¶¶ 7-8. Jolly states that "[e]ach document was evaluated to determine if any information could be segregated and released" and that "documents withheld in their entirety contain no meaningful portion that could be released without destroying the integrity of the documents or without identifying a third-party individual." *Id*. ¶ 33. EOUSA's *Vaughn* index supports Jolly's statements. *See id.*, Attach. A.

Most of the records were properly withheld under exemption 5 as attorney work product and deliberative process material. *See e.g., Vaughn* index Docs. 55, 61, 63 (total of 508 pages). Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in

---

[4] To the extent that the defendants are relying on exemption 2 to justify withholding information, they shall reconsider the invocation of this exemption in light of the Supreme Court's recent decision, *Milner v. Dep't of the Navy*, ___ 562 U.S. ___ (Mar. 7, 2011), *abrogating in part Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981) ("High 2" analysis).

discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); accord *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1112 (D.C. Cir. 2007) (citing cases). "Because Exemption 5 covers 'those documents, and only those documents, normally privileged in the civil discovery context' . . . , it does not protect documents that are 'routinely' or 'normally' disclosed in civil discovery[.]" *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008) (citations omitted).

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). And "[t]he primary purpose of [the attorney work product privilege] is to protect against disclosure the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation." *Heggestad v. United States Dep't of Justice*, 182 F. Supp.2d 1, 7 (D.D.C. 2000) (citing Fed. R. Civ. P. 26(b)(3)). Because "[t]he work-product privilege simply does not distinguish between factual and deliberative material [for segregability consideration] . . . . [I]f the work-product privilege protects the documents at issue [], [e]xemption (b)(5) protects them as well, regardless of their status as "factual" or "deliberative." *Martin v. Off. of Special Counsel, Merit Systems Protect. Bd.*, 819 F.2d 1181, 1187 (D.C. Cir. 1987).

In addition, it is not disputed that the records were compiled for law enforcement purposes. *See* Jolly Decl. ¶ 13 ("The entire responsive case file pertains to the criminal investigation of Mr. Davis for violations of lying to federal agents . . . and was compiled for criminal law enforcement purposes by the USAOs for the Eastern District of Wisconsin and the

Western District of Missouri . . . . "). Thus, EOUSA properly withheld third-party records under exemption 7(C), *see Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995) (finding third-party identifying information contained in law enforcement files "categorically exempt" from disclosure under exemption 7(C)), and plaintiff has not presented any evidence to suggest that an overriding public interest compels disclosure of the otherwise protected information. *See National Archives and Records Administration v. Favish*, 541 U.S. 157, 172 (2004) ("Where the privacy concerns addressed by [e]xemption 7(C) are present, . . . [the requester] must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake [and that] . . . the information is likely to advance that interest.").

Based on the information contained in EOUSA's *Vaughn* index, the Court finds that EOUSA properly withheld documents in their entirety under exemptions 5 and 7(C).

DOJ Records

The Criminal Division withheld five documents totaling 24 pages under FOIA exemptions 2, 5, 7(D) and 7(E). Gallego Decl. ¶ 14 & *Vaughn* Index [Dkt. # 34-13]. It properly withheld as attorney work product under exemption 5 a two-page memorandum from an OIA attorney to an assistant United States attorney discussing "how to incorporate [documents] into prosecution . . . ." *Vaughn* Index, Doc. 1.[5] The Court therefore will not address whether the same information was properly withheld under exemption 2 as "[i]nternal personnel rules and practices of the agency." *Id*. *See supra* note 4.

---

[5] For easier referencing, the Court has assigned a number to each document in the order listed in the *Vaughn* index.

As to the remaining documents – 2, 3 4, 5 -- the Court finds that DOJ has not properly justified those withholdings. The supporting declaration is not helpful because it merely parrots the statutory language of each claimed exemption, *see* Gallego Decl. ¶¶ 15-20, and thus "fails to supply the information necessary to facilitate the adversary process and De novo review." *Goland v. CIA*, 607 F.2d 339, 365 (D.C. Cir. 1978). Similarly, the *Vaughn* index lacks sufficient details about documents 3, 4 and 5 to determine whether they indeed contain attorney work product and, as to document 4, also deliberative process material. Furthermore, as to documents 3 and 5, described as requests to a foreign government for assistance, DOJ has not satisfied the threshold requirement of exemption 5 by showing that those documents are "inter-agency or intra-agency memorand[a] or letters . . . ." 5 U.S.C. § 552(b)(5).

DOJ purportedly withheld information contained in documents 3 and 5 also under exemption 7(E), but it has not shown what, if any, "techniques and procedures for law enforcement investigations or prosecutions, or . . . guidelines for law enforcement investigations or prosecutions . . . ," 5 U.S.C. § 552(b)(7)(E), are at risk of being exposed and why said exposure "could reasonably be expected to risk circumvention of the law." *Id*. The generic description of the documents as "prosecution memoranda . . . detailing evidence gathering efforts and prosecution strategies in Mr. Davis' criminal case," Gallego Decl. ¶ 19, does not suffice. *See Billington v. Dep't of Justice*, 69 F. Supp. 2d 128, 140 (D.D.C. 1999) ("Exemption 7(E) . . . may not be used to shield well-known or commonplace techniques or procedures.") (citations omitted), *rev'd in part on other grounds*, 233 F.3d 581 (D.C. Cir. 2000); *cf. Blanton v. Dep't of Justice*, 64 Fed. Appx. 787, 789 (D.C. Cir. 2003) ("With respect to Exemption 7(E), the FBI's affidavit adequately established that the polygraph information was not generally known to the

public."); *Durrani v. U.S. Dep't of Justice*, 607 F. Supp. 2d 77, 91 (D.D.C. 2009) (finding that the declarant had "provided a reasonable explanation for why disclosure of such information could impede current and future investigations.").

DOJ withheld document 2 -- a two-page "[l]etter to OIA from a foreign Attorney General providing factual information re criminal case in confidence" -- under exemption 7(D). *Vaughn* Index. Exemption 7(D) allows the withholding of records if their disclosure "could reasonably be expected to disclose the identity of a confidential source. . . ." 5 U.S.C. § 552(b) (7)(D). A confidential source includes "a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis." *Id*. The agency, however, has the burden of showing, *inter alia*, that an informant provided the information under either an express or implied promise of confidentiality and that disclosure could reasonably be expected to disclose the source's identity. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 171-72 (1993).

An express assurance of confidentiality is shown by an agency's proffer of "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995)). Such evidence may take many forms, such as notations on the face of the withheld document, an official's personal knowledge about the source, a statement from the source, or documents discussing practices or policies for dealing with the source at issue or similarly situated sources. *Id*.; *see Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 585 (D.C. Cir. 2000) ("At the very least[,] the government must indicate where [express] assurances of confidentiality are memorialized."). When the agency claims an implied assurance of confidentiality, the proper inquiry is "whether the particular source spoke with an understanding

that the communication would remain confidential." *Landano,* 508 U.S. at 172. An implied assurance of confidentiality may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. *Id; Computer Professionals for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 905-06 (D.C. Cir. 1996). DOJ has proffered no evidence from which the Court can find either an express or an implied grant of confidentiality.

For the foregoing reasons, the Court will deny the motion as to DOJ on the withholding of all Criminal Division documents in their entirety except the Memorandum dated April 7, 2005, which the Court determines was properly withheld as attorney work product.

IRS Records

The IRS properly withheld two documents totaling three pages under exemption 3 because they were third-party tax records. Broomall Decl. ¶ 5 & *Vaughn* Index [Dkt. # 34-16] (citing 26 U.S.C. § 6103). Exemption 3 protects from disclosure records that are "specifically exempted . . . by statute . . . provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3); *see Senate of the Commonwealth of Puerto Rico v. U. S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). The tax code specifically prohibits the disclosure of "any return or return information." 26 U.S.C. § 6103(a). *See Tax Analysts v. IRS*, 410 F.3d 715, 718 (D.C. Cir. 2005) ("Tax returns and return information remain confidential except where provided to the contrary."). The IRS therefore is entitled to summary judgment on its withholding of entire documents under exemption 3.

## *2. Adequacy of the Searches*

Plaintiff asserts that defendants "have not produced the [requested] material . . . that is clearly defined on its face."[6] Pl.'s Opp'n at 3. But "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)); accord *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 390-391 (D.C. Cir. 2007) ("the fact that a particular document was not found does not demonstrate the inadequacy of a search.") (citations omitted). Because the agency is the possessor of the records and is responsible for conducting the search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citations omitted).

In determining the adequacy of a FOIA search, the court is guided by principles of reasonableness "based on what the agency knew at its conclusion rather than what the agency speculated at its inception." *Campbell*, 164 F.3d at 28. "If the requester produces countervailing evidence placing the sufficiency of the identification or retrieval procedures genuinely in issue, summary judgment is inappropriate." *Spannaus v. CIA*, 841 F. Supp. 14, 16 (D.D.C. 1993)

---

[6] In the "Conclusion" of his opposition, plaintiff seeks the production of records from "C.C.A. in Levenworth, Kansas" and the "U.S. Marshalls [sic]." Pl.'s Opp'n at 4. Neither of those entities was named as a defendant to this action, and the complaint's allegations provide no notice of a claim against either the Bureau of Prisons or the U.S. Marshals Service. Plaintiff has not moved to amend the complaint to add those defendants, and to do so now would come too late in these proceedings. Presumably, plaintiff can bring a separate FOIA action against those entities.

(citing *Church of Scientology v. Nat'l Security Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979)); *see Valencia-Lucena*, 180 F.3d at 326 (summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search) (citation omitted).

FBI's Search

The FBI searched its Central Records System ("CRS") utilizing "a six-way phonetic breakdown" of plaintiff's full name and identified a main file containing potentially responsive records and cross-reference files. Hardy Decl. ¶¶ 41-42. The "General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, [it] may have in its CRS files on a particular subject matter or individual, such as Adam Davis." *Id*. ¶ 35. The FBI also searched its Electronic Surveillance indices, also categorized by name, but located no responsive records. *Id*.

Based on Mr. Hardy's detailed description of the FBI's filing system, *see id*. ¶¶ 30-40, the search methods employed and the retrieval of responsive records, the Court finds that the FBI conducted an adequate search for records. Plaintiff faults the FBI for not producing documents pertaining to an alleged FBI investigation of him from 1984 to 1988 of which he claims to have "first hand knowledge" because "he interacted with FBI agents while being investigated at his workplace." Pl.'s Opp'n at 2. Plaintiff speculates that records of the alleged investigation should exist, but he has not produced any evidence to raise a genuine dispute about the reasonableness of the FBI's search. The Court therefore will grant summary judgment to the FBI on its search for responsive records.

### EOUSA's Search

EOUSA searched "the computer tracking system for the United States Attorney Offices ["USAOs"], the Legal Information Office Network System ("LIONS")," utilizing plaintiff's name. Jolly Decl. ¶ 10. It located records in the USAOs for the Western District of Missouri and the Eastern District of Wisconsin. *Id*. ¶¶ 10-11. The search located two criminal case files in the Western District of Missouri "related to [plaintiff's] arrest and removal . . . following his indictment, and to his arrest and transfer following his prosecution and flee from the Eastern District of Wisconsin," *id*. ¶ 10, and three criminal case files in the Eastern District of Wisconsin "related to [plaintiff's] prosecution and appeal," *id*. ¶ 11. In addition to those file searches, an e-mail was sent to the AUSA assigned to plaintiff's case in Missouri, *id*. ¶ 10, an inquiry was made to the prosecuting AUSA in Wisconsin, and e-mails were sent "to all the USAO for the Eastern District of Wisconsin employees regarding [responsive] documents[,]" *id*. ¶ 11. Jolly states that "[t]here are no other records systems or locations within [both USAOs] in which other files pertaining to the Plaintiff were maintained." *Id*. ¶¶ 10, 11. Based on the Jolly declaration and those of Teri L. Morris [Dkt. # 34-9], who conducted the search in the Western District of Missouri, and Charles E. Westphal [Dkt. # 34-10], who conducted the search in the Eastern District of Wisconsin, the Court finds that EOUSA conducted an adequate search for records. It therefore will grant summary judgment to EOUSA on its search for responsive records.

### DOJ's Search

The Criminal Division first searched its central index by variations of plaintiff's name but located no records. Gallego Decl. ¶ 11. Based on plaintiff's selections made from the "Descriptive List of Criminal Division Sections that Maintain Records by Personal Identifiers,"

Dkt. # 34-12, the Division then "sent a search request sheet to each [section, except the Electronic Surveillance Unit,] [containing] detailed instructions . . . to record the specific search terms and the systems searched."[7] Gallego Decl. ¶ 12. Ms. Gallego describes each section's search. *See id*. ¶ 13(a)-(h). Computerized searches were "conducted by inputting the search terms that plaintiff had provided, specifically, 'Adam Davis,' 'Adam E. Davis' and 'Adam Eugene Davis'." *Id*. ¶ 13. "Where the records [were] hard copy, a manual search was conducted using" those search terms. *Id*. "Several sections also searched the Automated Case Tracking System," which "tracks all cases and matters that are the responsibility of the Criminal Division's litigating sections." *Id*. Based on the description of the Division's filing systems and Ms. Gallego's description of the search methods employed, the Court finds that the Criminal Division conducted an adequate search. It therefore will grant summary judgment to DOJ on its search for responsive records.

IRS' Search

The IRS searched its Information Data Retrieval System ("IDRS"), "the major IRS database of taxpayer information," utilizing plaintiff's name and social security number. Jensen Decl. ¶ 4. The IRS "learned [from the search] that plaintiff had not filed returns for the tax years 2000 through 2002 and 2004 through 2009[;]" thus, no responsive records were located for those years. *Id*. The IRS located one "entry . . . that a Substitute for Return Assessment tax year 2003 was prepared by the IRS on plaintiff's behalf." *Id*. Based on that entry, Ms. Jensen made inquiries to the Dayton Federal Records Center "for any paper records associated with tax year

---

[7] Plaintiff's request to search the Electronic Surveillance Unit was closed after he failed to provide "three pieces of additional information" needed to search surveillance records. Gallego Decl. ¶ 7.

2003," to no avail. *Id*. ¶ 5. She then "requested a copy of the Substitute for Return File from [a] Fresno Automatic Substitute For Return (ASFR)" team member, who, after searching the ASFR computer system, located no responsive information. *Id*. ¶ 6.

Ms. Jenson concluded from the IRS' three-year record retention schedule that plaintiff's 2003 assessment made in August 2003 "would have been automatically destroyed in August 2009," two months before his FOIA request dated October 5, 2009. *Id*. Nevertheless, the IRS informed plaintiff that it "was unable to secure the administrative file for 2003, and that if the records were still needed, an additional request could be submitted in 90 days." *Id*. ¶ 8. In addition, the IRS provided plaintiff "a copy of Form 4506-T, Request for Transcript of Tax Return, which could be used to identify and request transcripts for tax year 2003." *Id*. This suggests that there may be other filing systems that the IRS failed to search. Ms. Jensen does not state that the IDRS is the only filing system likely to contain records responsive to plaintiff's request and she has not provided a description of the IRS' filing systems from which a reasonable inference can be drawn.[8] The Court therefore cannot conclude from the current evidence that the IRS conducted an adequate search. It therefore will deny summary judgment to the IRS on its search for responsive records.

---

[8] In its administrative response to plaintiff, the IRS informed him that "any existing records pertaining to [his criminal case] would be maintained by the Federal Court and [DOJ]." Jensen Decl., Ex. B. In her declaration to the Court, Ms. Jensen has not addressed this aspect of plaintiff's request. In supplementing the record, and if such is the case, the IRS should include an explanation of why it did not search for records pertaining to plaintiff's criminal case. Even if such records may be found in a court or another agency, the agency receiving a FOIA request is obligated to produce any responsive records that are in its custody and control at the time of the request. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983).

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion for summary judgment. The Court grants the motion as to each defendants' withholding of documents in part and EOUSA's and the IRS's withholding of documents in their entirety. As to the withholding of entire documents by the FBI and DOJ, the motion is denied without prejudice. In addition, the Court grants the motion as to the searches performed by the FBI, EOUSA and DOJ. As to the IRS' search for records, the motion is denied without prejudice. A separate Order accompanies this Memorandum Opinion.

SIGNED:    EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

DATE: March 16, 2011